William M. Fitzgerald, Esq.
LAW OFFICES OF WILLIAM M. FITZGERALD
2nd Fl. Macaranas Bldg., Garapan Beach Road
P.O. Box 500909
Saipan, MP 96950
Telephone: (670) 234-7241
Fax: (670) 234-7530
Email: fitzgerald.law@gmail.com

Attorney for Plaintiff

FILED
Clerk
District Court

NOV 0 4 2019

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOSHUA GRAY,<br><br>           Plaintiff,<br><br>v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>           Defendant. | CIVIL CASE NO. CV 19-00020<br><br>COMPLAINT PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT AS AMENDED |

COMES NOW, Plaintiff Joshua Gray, with the following Complaint against Imperial Pacific International (CNMI), LLC.

**JURISDICTION**

1. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), applies to this matter through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, §502(a)(2).

2. This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981a(a)(1).

3. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1337(a) (proceedings arising under any Act of Congress regulating commerce) and 48 U.S.C. §§ 1822 and 1824 (jurisdiction of the District Court for the Northern Mariana Islands).

4. Venue is properly placed in this Court as at all times relevant to Plaintiff's claims herein, Plaintiff Gray was employed by Defendant Imperial Pacific in Saipan, Commonwealth of the Northern Mariana Islands ("CNMI"), the CNMI is the jurisdiction in which the unlawful employment practices of Defendant occurred and the CNMI is the jurisdiction that all tortious conduct alleged in this Complaint took place. *See* 28 U.S.C. § 1391(b)(2); 42 U.S.C. § 2000e-5(f)(3).

**PARTIES**

5. Plaintiff Joshua Gray ("Gray") is a citizen of the United States and a legal resident of the CNMI and an employee within the meaning of 42 U.S.C. § 2000e(f).

6. Defendant Imperial Pacific International (CNMI), LLC ("Imperial Pacific"). Imperial Pacific is a Limited Liability Company organized under the laws of the CNMI.

7. At all times relevant to Gray's claims herein, Imperial Pacific was an "employer" within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b).

8. Upon information and belief, at all times relevant to Gray's claims herein, Imperial Pacific employed more than 15 employees.

9. At all times relevant to Gray's claims herein, Imperial Pacific was engaged in an industry affecting commerce within the meaning of Sections 701(g) and (f) of Title VII, 42 U.S.C. §§ 2000e(g) and (f).

**FACTS**

10. Defendant Imperial Pacific, instituted and operates a casino in Saipan.

11. At all times mentioned herein, Plaintiff has had a distinguished career in the hotel industry, working in Las Vegas and Honolulu, before his employment with Imperial Pacific.

12. In July 2015, Plaintiff was recruited by Imperial Pacific to work as Director of Hotel Operations and was terminated from his employment on January 24, 2019.

13. Plaintiff, at the time of his termination, was working pursuant to a contract dated May 8, 2017, that contemplated the duration of Plaintiff's employment to be for such period that his work was satisfactory and until the date of his termination, his work, on behalf of Defendant, was not only satisfactory, but exemplary and was performed professionally and competently, Plaintiff receiving absolutely no complaints from Imperial Pacific, but rather, a promotion.

14. In 2016, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") for discrimination.

15. After intervention by EEOC, Plaintiff was given a promotion and salary increase on April 25, 2017.

16. In late 2017, Plaintiff complained to Imperial Pacific management that the company was violating the immigration law and the public policy of the CNMI, specifically 3 CMC § 4521, by failing to give preference for employment with Imperial Pacific to U.S. citizens and CNMI permanent residents and that it was falsely certifying to the U.S. Department of Labor that all Imperial Pacific's job opportunities were open to any U.S. citizen and that U.S. workers who had applied and been rejected by Imperial Pacific for employment were rejected for lawful job related reasons. This was untrue and in violation of 18 U.S.C. §§ 2 and 1001, and 18 U.S.C. §§ 1546 and 1621, because workers were rejected solely because they were not Asian.

17. A high-ranking management official of Imperial Pacific, a white U.S. citizen, stated publicly that the board of Imperial Pacific in Hong Kong is responsible for termination of U.S. citizens and if the board could, it would terminate all U.S. citizens, including him.

3

18. Plaintiff complained about these and other violations of law, and informed Imperial Pacific that it had to stop these practices and conform to the law.

19. It was common knowledge and understood that Imperial Pacific's U.S. citizen employees were not to apply for jobs posted on the CNMI Job Vacancy Announcement ("JVA") website for executive level positions because these jobs were to be filled by Chinese non-U.S. citizens.

20. Imperial Pacific did not receive Plaintiff's complaints well, but conditioned his continued employment upon his ceasing his complaints about their immigration policy, which Plaintiff refused to do.

21. In March and April 2018, Plaintiff was informed that his job responsibilities would be changed to assist with a "floating hotel", a demotion, and a project that never materialized.

22. Plaintiff complained to legal counsel for Imperial Pacific that this assignment constituted significant diminished material responsibilities in his work and was a demotion that was done in retaliation for his EEOC complaint.

23. Legal counsel ignored Plaintiff's complaint.

24. In November 2018, Plaintiff was told by the Imperial Pacific's Human Resource Department that his name was on a list of people to be fired, because management was upset because of his complaints.

25. In January 2019, Plaintiff was told by a senior executive of Imperial Pacific that he was instructed to fire Plaintiff, but refused to do so because Plaintiff was the only person in the company qualified to run hotel operations for Imperial Pacific, and its new project in Marpi.

26. This senior executive was then informed by the owner of Imperial Pacific that he wanted Plaintiff, who he described as the fat black guy, fired and that a Chinese woman, Lucy Guo, a non-U.S. citizen, would handle the hotel operations. This executive explained to the owner that

Imperial Pacific could not legally fire a U.S. citizen and give the same responsibilities to a non-U.S. citizen.

27. Shortly thereafter, the senior executive informed Plaintiff that the owner ignored his advice and insisted that Plaintiff be terminated.

28. Plaintiff's employment continued until January 24, 2019, when Imperial Pacific breached the contract's covenant of good faith and fair dealing and violated public policy, by terminating Plaintiff, without reason or justification, in retaliation for his numerous complaints about Imperial Pacific's violation of U.S. immigration laws, and pursuant to Imperial Pacific's discriminatory policy to hire Asians instead of white and black U.S. citizens, all in violation of the public policy of the United States and the CNMI.

29. Defendant Imperial Pacific provided no basis or reason for the termination of Plaintiff, an outstanding employee, who had received a promotion and done nothing to merit termination, and the termination was clearly in retaliation for Plaintiff's complaints about and refusal to go along with Imperial Pacific's violations of law, and its discriminatory policy of hiring Asians even though qualified U.S. citizens were available.

30. Defendant Imperial Pacific terminated Plaintiff because he complained about and refused to participate in or acquiescence to illegal acts by Imperial Pacific, and because Imperial Pacific had a policy to deny employment to white and black U.S. citizens, in favor of Asians.

31. On July 26, 2019, Plaintiff filed with the EEOC, a charge of discrimination, pursuant to Title VII of the Civil Rights Act of 1964, which he laid out the following facts.

(a) In July 2016, Plaintiff filed a Charge against Defendant Imperial Pacific with the EEOC (Charge No. 486-2016-00313). This Charge was based on Defendant Imperial Pacific's repeated violations of CNMI and U.S. labor law by refusing to interview and/or hire qualified U.S. citizens for available jobs that were given to foreign workers. Two

specific jobs that pertained to Plaintiff were Assistant Vice President of Hotel Operations and Vice President of Hotel Operations. Imperial Pacific knew that Plaintiff was qualified for both positions, but refused to hire/promote Plaintiff to either position as it had already recruited and offered the jobs to foreign workers.

(b) In March 2017, Plaintiff informed Defendant Imperial Pacific of his desire/interest for the position of Vice President of Talent and Property Management. Plaintiff also informed the EEOC of his desire to interview for this position in hopes of resolving his EEOC charge. IPI once again refused to interview or hire Plaintiff, even though Plaintiff was qualified for the position.

(c) After ten (10) months of negotiations, Plaintiff withdrew his complaint because of what he considered, at the time, a reasonable offer by Defendant Imperial Pacific. However, Defendant Imperial Pacific reneged and continued to violate the law.

(d) In October 2017, Plaintiff began making complaints to Defendant Imperial Pacific again about their discriminatory hiring and promoting practices.

(e) In November 2017, Plaintiff was put on a list to be terminated by Defendant Imperial Pacific, in retaliation for his EEOC claim and was scheduled to be terminated on November 30, 2017. After speaking with senior management, Defendant Imperial Pacific chose not to terminate Plaintiff at that time.

(f) From December 2017 to May 2018, Plaintiff was assigned to work on a "floating hotel, a demotion, and was told in April 2018 that his job duties would be changed and Calvin Wong, an Asian foreign worker, would take over his responsibilities for the hotel. The "floating hotel" never materialized.

(g) In May 2018, Plaintiff informed Defendant Imperial Pacific's legal counsel that he was being excluded from meetings concerning his specific areas of responsibility

and other meetings regarding hotel operations, management giving these job duties and responsibilities to a foreign worker.

(h) In June 2018, Plaintiff requested a meeting with the head of Human Resources, Marco Teng, to discuss his concerns with the structure of hotel operations and other issues that Plaintiff felt were adversely affecting his job. No meeting ever took place.

(i) In November 2018, Plaintiff was informed by two colleagues that they were told by a Human Resources employee that Plaintiff was to be terminated.

(j) In January 2019, Plaintiff was informed by senior management, that the owner, Mr. Ji, wanted Plaintiff terminated. When the senior management explained to the owner that Plaintiff was the only person currently employed by Defendant Imperial Pacific who was qualified to run Hotel Operations and Defendant Imperial Pacific's future hotel endeavors, the owner still insisted on Plaintiff's termination.

(k) Defendant Imperial Pacific's failure to hire/promote Plaintiff and its wrongful termination of him was based on discrimination against Plaintiff's race, color, and national origin, and the fact that he was a black non-Asian American citizen and was in retaliation against him because of his earlier filing of an EEOC complaint, as well as his continued complaints about Defendant Imperial Pacific's violations of CNMI and U.S. labor law.

32. On July 31, 2019, EEOC issued Plaintiff a Right to Sue letter, which he received on August 6, 2019. A copy of the letter is attached to this Complaint as **Exhibit A**.

# FIRST CAUSE OF ACTION
## STATUS BASED DISCRIMINATION

33. Plaintiff restates and realleges as if fully set forth herein paragraphs 1 through 32.

34. The conduct described in ¶¶ 13 through 30 and ¶¶ 31(a) through 31(k) of this Complaint was intended and enacted for the purpose of discriminating against Plaintiff on the basis that he was a black African American and non-Asian.

35. At all times mentioned herein, Plaintiff was the most qualified person within Imperial Pacific to handle the positions that he had requested and was denied, as well as the most qualified to handle the position he was terminated from on January 24, 2019, and he was executing the duties of this position adequately and meeting his employer's expectations.

36. Senior management informed the owner of Imperial Pacific of this and that to replace the most qualified U.S. citizen with a foreign worker would be illegal and that he should not do it.

37. The owner ignored this advice and ordered that Plaintiff, be fired and replaced by a non-U.S. citizen Chinese woman.

38. Plaintiff would not have suffered the discrimination described in this complaint and would not have been wrongfully terminated if he were Asian instead of a black African American.

39. Plaintiff, as a black African American U.S. citizen, is a member of a class protected against discrimination based on color, race, national origin and citizenship.

40. Plaintiff was the most qualified person who applied for the jobs described in this Complaint and was the most qualified person to hold the position that he was terminated from.

41. Despite this, Plaintiff was subjected to discrimination and ultimately terminated and his position filled by a non-U.S. citizen Asian.

42. But for the discriminatory policy of Imperial Pacific to favor non-U.S. Asians over U.S. citizens, Plaintiff would not have suffered the discrimination described in this complaint and would not have been wrongfully terminated from his position.

## SECOND CAUSE OF ACTION
## RETALIATION BASED DISCRIMINATION

43. Plaintiff restates and realleges as if fully set forth herein paragraphs 1 through 42.

44. During the time he was employed by defendant, Plaintiff repeatedly complained about discrimination by Defendant Imperial Pacific in their hiring and firing practices and in 2016 filed an EEOC claim, complaining about discrimination against him based on his race, color, citizenship and national origin.

45. Actions by Defendant, including, *inter alia*, failure to hire, demotion, interference with his management duties and ultimately termination were discriminatory and were in retaliation for Plaintiff's complaints to the EEOC about Imperial Pacific's ongoing policy of discrimination.

46. Plaintiff, by pointing out to Imperial Pacific that its practice of hiring Asians instead of qualified U.S. citizens was a violation of the law and by reporting this to EEOC, was participating in a protected activity.

47. Imperial Pacific demoted Plaintiff, interfered with his ability to discharge his job duties, and finally terminated him because of his participation in this protected activity.

48. If Plaintiff had been Asian instead of a black African American, and if he had not complained of Imperial Pacific's discriminatory policies, he would not have been subjected to demotion and the other discriminatory actions described in this complaint and would not have been wrongfully terminated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for damages against Defendant Imperial Pacific as follows:

1. For actual damages in an amount to be proven at trial.

2. For such other and further relief as the court deem appropriate.

DATED this 4th day of November, 2019.

                                                LAW OFFICE OF WILLIAM M. FIZGERALD

                                                */s/ William M. Fitzgerald*

                                                William M. Fitzgerald, Esq.
                                                Attorney for Plaintiff

# EXHIBIT A

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Joshua Gray, Sr.<br>c/o William Fitzgerald, Esq.<br>2nd Fl. Macaranas Bldg. P.O. Box 500909<br>Saipan, MP 96950 | From: | Honolulu Local Office<br>300 Ala Moana Blvd<br>Room 4-257<br>Honolulu, HI 96850 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 480-2019-03953 | Raymond Griffin, Jr., Investigator | (808) 541-3721 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Glory Gervacio Saure,
Local Office Director

7/31/19
(Date Mailed)

Enclosures(s)

cc: Kelley Butcher
Legal Counsel
IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC
P.O. Box 10000 PMB 918
Saipan, MP 96950

8/06/2019
RECEIVED

Enclosure with EEOC

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**  --  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**  --  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**  --  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**  --  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*